UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GUSTAVO GONIMA, et al.,
     Plaintiffs,

                                         Case No. 8:05-cv-00512-T-17-TBM

v.

MANATEE COUNTY SCHOOL BOARD,
     Defendant.
_____

**ORDER ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT**

     This cause is before the Court on the Defendant's Motions for Summary Judgment as to Plaintiff's Braselton and Gonima (Dockets No. 24 and 29), filed on October 2, 2006; and Plaintiffs' Response to Defendant's Motions (Docket No. 37), filed on October 30, 2006.  For reasons stated below, Defendant's Motion for Summary Judgment as to Plaintiff GONIMA is **GRANTED in part and DENIED in part**.

Defendant's Motion for Summary Judgment at to Plaintiff BRASELTON is **GRANTED**.

## BACKGROUND

### PROCEDURAL

This case initiated in State Court[1] on February 4, 2005, and was subsequently removed to Federal Court by Defendant on March 17, 2005. The Complaint against Defendant Manatee County School Board (Board) was filed by a number of plaintiffs, all of whom have since been dismissed, with the exception of Plaintiffs Gustavo Gonima and William Braselton. The complaint was based on Title VII of the Civil Rights Act of 1964, as well as Florida Civil Rights Act of 1990 and other state law. Gustavo alleged claims of: (1) hostile work environment based on national origin; (2) denial of promotions; (3) constructive discharge, (4) retaliation for filing an EEOC charge, and (5) intentional infliction of emotional distress. Braselton alleged retaliation under Title VII and the Florida Civil Rights Act of 1990. The Parties have completed discovery and submit affidavits, depositions, and other discovered material in support of the Motions for Summary Judgment and Response hereto.

### FACTUAL

---

[1] 12th Judicial Circuit in and for Manatee County, Florida. Case No. 2005-CA-668 Div. D.

A. Gonima

      Gustavo Gonima is of Columbian nationality.  In January of 2000, the Board hired Gonima to work as Trades Helper in the Mechanical Equipment Repair section of the Department of Vehicle Maintenance. Gonima took this job with the hope of learning the mechanics' terminology in the English language and being promoted to a better position within the Board.  While employed by the Board, Gonima estimated his proficiency in the English language at less than sixty percent.  During his employment, Gonima was subjected to derogatory and vulgar comments made by Gonima's co-workers regarding Gonima's national origin. Among these comments Gonima's co-workers: called Gonima a "Columbian mother fu***r"; said that there were only "gorillas" in Columbia; said "immigrants were the worst and they are sh**"; made motions like a monkey and said Spanish people were "animals"; showed Gonima a magazine picture of gorillas and said "that's all there is in Columbia"; said "all immigrants are Indians"; and said "you have to learn where you are living".  Gonima was also subjected to harassing acts. In particular, Gonima's co-workers: threw away his tennis shoes, threw water and an aluminum foil ball at him, threw sunflower seeds on the floor and laughed while they watched Gonima cleaning them up.  Gonima was allegedly instructed not to touch the tools of the mechanics or to talk to the mechanics by one co-worker and was instructed to pick up mechanics' air hoses and clean up the mechanics' spaces by a supervisor at the same time. Some of the other acts of discrimination/harassment alleged by Gonima were: a change in work schedule; untimely denial of promotions; co-workers instructed not to talk to Gonima; damage to Gonima's vehicles; contradictory work orders; orders to perform jobs that were unsafe, and

required Gonima to work outdoors, while other employees had more favorable conditions; denial of a translator by the Board; and accusation of falsifying a letter of recommendation that caused Gonima to lose a job with the Levy County School Board. Gonima claims to have reported these acts to his supervisor(s), as a result of which some of the acts were addressed or remedied and some were not.

Gonima alleges a total of twenty-six acts of discrimination/harassment during the period between August 2000 and August 2004. Gonima claims that all of these acts began as a result of his national origin, and continued as a result of Gonima's refusal to ignore the conduct of his co-workers.

On November 27, 2002, Gonima filed a charge of discrimination, alleging national origin discrimination including verbal harassment and denial of promotions. On July 24, 2003, Gonima resigned. Gonima claims that his resignation was forced by the unbearable conditions of the last days at work with the Board. One month before his resignation, Gonima requested a change in his work hours because of the "exhausting nature of [his] work". On January 22, 2004, Gonima amended the charge of discrimination to include a claim of constructive discharge On August 2, 2004, the Equal Employment Opportunity Commission (EEOC) issued a Notice of Right to Sue letter, which informed Gonima that he had ninety (90) days to file suit.

In August 2004, Gonima was offered a position as a Mechanic with the Levy County School Board. The offer of employment was rescinded because the Board allegedly indicated to Levy Country officials that Gonima had falsified a reference letter. Kathleen Braselton, the Director of the Department of Transportation and the husband of the co-plaintiff William Braselton, wrote a reference letter for Gonima. On December

10, 2004, Gonima filed a second EEOC charge, in which he alleged that the Board

retaliated against him for filing the first EEOC charge, by telling the Levy County School

Board that Gonima falsified the letter of recommendation.

B. Braselton

      William Braselton has been employed by the Board for twenty-four years, and is

currently a Carpenter in the Capital Building Department. The first twenty years of his

employment with the Board, Braselton spent in the Mechanical Equipment Repair section

of the Department of Vehicle Maintenance. Braselton began having issues with his

supervisor Moore around the year 1997, but he admits that these issues are not related to

this case.  In 2000, Braselton met Gonima, and purportedly observed Gonima

discriminated and harassed by his co-workers.  In September 2002, the Director of

Operations and Maintenance (Henson) and the Vehicle Maintenance Supervisor (Ross)

requested that Braselton be transferred to another location because of work-related

disputes and Braselton's long-standing feud with Moore.  Subsequently, Braselton was

transferred in January 2003 and again in June 2004.

      Braselton's lawsuit is based solely on his claim that he was retaliated against for

opposing discrimination against, and supporting, Gonima.  Most notably, on December

11, 2003, Braselton gave an Affidavit to the EEOC in support of Gonima's charge of

discrimination. Braselton continued participating in the EEOC investigation until late

June of 2004.  At that time, Braselton was informed by the Board's Staff Attorney

(Shapiro) that the Department of Justice wanted to interview him regarding Gonima's

charge of discrimination.  Braselton never told any of his supervisors about his

participation with the EEOC, and does not know if anyone else had told the supervisors

of the same. Braselton does not know whether anyone else at the Board, other than Shapiro, knew about the Gonima-discrimination interview. However, Braselton claims that Shapiro would have been required to inform his employer/client of the pending investigation and the statement by Braselton.  Shapiro was apparently not personally involved in the decision to transfer Braselton.

On August 30, 2004, Braselton filed an EEOC discrimination charge claiming retaliation.  That charge alleges: (1) demotion from Interim shop lead in May of 2002, (2) September 9, 2002 transfer, (3) January 13, 2003 transfer, (4) June 24, 2004 transfer, (5) January 10, 2003 reprimand, (6) denied computer access, (7) forbidden to enter job site in September of 2002, (8) company vehicle removed and replaced by sub-standard vehicle in January of 2003, (9) denied parts and support in January of 2003, and (10) denied training prior to the transfer in January of 2003.  Finally, in July of 2005, Braselton requested and was granted a transfer to a carpenter position in the Capital Building Department.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56©) states that summary judgment shall be granted if the Court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The Court's determination that no genuine issue of material fact exists shall be based on the totality of the evidence presented in the "pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits submitted. Fed. R. Civ. P. 56©).

Once the moving party has properly supported its motion for summary judgment, the non-moving party must go beyond the pleadings to show that a genuine issue exists for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party must come forward with evidence sufficient to establish the existence of the essential elements of its case, and which the non-moving party will have the burden to prove at trial. *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Elecs. N. Am. Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999); *Earley v. Champion International Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1077).

When determining whether the moving party has met its burden, the Court accepts as true the non-movant's evidence, and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The question before the court is not whether the judge thinks the evidence obviously favors the plaintiff on the evidence presented. *Id*. at 252.  Only where the record, taken in its entirety, cannot lead a rational trier of fact to find for the non-moving party, is there

no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio. Corp.*, 475 U.S. 574, 587 (1986).

DISCUSSION

The basic process and the allocation of burdens among the parties in employment discrimination cases, is well established through *McDonnell Douglas Corp. v. Green* case.  411 U.S. 792 (1973); see *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-254 (1981).  Plaintiff must prove, by preponderance of the evidence, a *prima facie* case of discrimination.  *Burdine*, 450 U.S. at 252-253.  Once the Plaintiff successfully established the *prima facie* case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions. *Id.* at 253.  If the defendant sufficiently shows a legitimate reason, the burden again shifts to the plaintiff to prove by preponderance of the evidence that the legitimate reason is a mere pretext for discrimination. *Id.*

Additionally, claims under the Florida Civil Rights Act (FCRA) are analyzed under the same framework and standards as the Title VII claims.  *Reis v. Universal City Development Partners, LTD.*, 442 F.Supp.2d. 1238, 1252 (M.D. Fla. 2006) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278,1287 (11th Cir. 1997)); *Masso v. Miami-Dade County*, 465 F.Supp.2d 1260, 1263  (S.D. Fla. 2006) (citing *Tippie v. Spacelabs Medical, Inc.*, 180 Fed.Appx. 51 (11th Cir. 2006)); *Speedway Superamerica, LLC*, 933 So.2d 75, 102 (5th DCA 2006) (Florida Supreme Court has long recognized that Title VII was the model for FCRA) (citing *Byrd v. Richardson-Greenshields Secur., Inc.*, 552 So.2d 1099, 1102 (Fla. 1989)).

## I.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF GONIMA

### A.  Gonima Failed to File a Timely Suit Within Ninety Days of the EEOC Right to Sue Letter For Title VII Claims

The EEOC right to sue letter mandates that the plaintiff commence his lawsuit within ninety (90) days of the receipt of this letter. See *Law v. Hercules, Inc.*, 713 F.2d 691 (11th Cir. 1983).  Furthermore, Plaintiff has the burden to show that he did in fact commence his suit within 90 days from the receipt of the right to sue notice. 42 U.S.C.A. § 2000e-5(f)(1); *Martinez v. U.S. Sugar Corp.*, 880 F. Supp. 773, 777 (M.D. Fla. 1995).

Gonima's Title VII claims are barred by the statute of limitations because Gonima failed to file his suit within ninety days of the receipt of right to sue notice.  The EEOC right to sue letter was time stamped August 2, 2004.  The lawsuit was initiated on February 4, 2005, 184 days after the issuance of the letter.  Plaintiff fails to offer any reason whatsoever to show that the receipt of the letter was delayed long enough to bring Gonima within the ninety-day period.  Since Gonima had the burden to prove his compliance with the statute of limitations, and failed to offer even a scintilla of evidence to show that he received his notice on or after November 4, 2004[2], this Court must dismiss all of Gonima's Title VII claims.[3]

---

[2] 90 days or less from the date of suit on February 4, 2005.
[3] Court is dismissing the Title VII claims made under the first, November 27, 2002 EEOC charge.  The claim of retaliation in the second EEOC charge, made on December 10, 2004, is timely and is analyzed separately below.

**B.  <u>Gonima Failed to File a Timely Administrative Charge of Discrimination For Some State Claims</u>**

Both Title VII and FCRA require that administrative remedies must be exhausted before a lawsuit can be initiated. See *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970).  The scope of the subsequent lawsuit is limited to the scope of the Equal Employment Opportunity Commission investigation, reasonably derived from the charge of discrimination. *Sanchez*, 431 F.2d at 466; *Griffin v. Carlin*, 755 F. 2d 1516, 1522(11th Cir. 1985); *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1224-1225 (11th Cir. 2000).  Furthermore, Title VII mandates that the initial EEOC charge must be filed within 300 days of the occurring alleged unlawful employment practice.  *National Railroad Passengers Corp. v. Morgan*, 536 U.S. 101, 110 (2002).  Likewise, FCRA dictates a charge filing limitation of 365 days from the alleged violation. Fla. Stat. §760.11(1); see *Greene v. Seminole Electric Cooperative, Inc.*, 701 So.2d 646, 648 (Fla. 5th DCA 1997) (citing *St. Petersburg Motor Club v. Cook*, 567 So.2d 488 (Fla. 2d DCA 1990); Fla. Stat. §760.11(1).  The only exceptions that allow the tolling of the limitation period are found in §95.051 of the Florida Statutes. *Greene*, 701 So.2d at 648.

Claims challenging discrete discriminatory or retaliatory acts are treated differently from hostile work environment claims for the purposes of the timely filing requirement. *Morgan*, 536 U.S. 101, 105; *Ledbetter v. Goodyear Tire and Rubber Company, Inc.*, 421 F.3d 1169, 1178-1179 (11th Cir. 2005).  Discrete discriminatory or retaliatory acts are subject to an absolute time bar, and are not actionable when time-barred, no matter how related they may be to the timely filed discriminatory actions. *Ledbetter*, 421 F.3d at 1178-1179.  Because discrete acts of discrimination like "termination, failure to promote, denial of transfer, or refusal to hire" are easily divided

and identified, they each begin their own new clock for the filing time limitation. *Morgan*, 536 U.S. at 113-114.

Hostile environment claims, unlike discrete acts, involve repeated conduct. *Ledbetter*, 421 F.3d at 1179 (citing *Morgan* 536 U.S. at 115).  A hostile environment claim is comprised of a "series of separate acts that collectively constitute one 'unlawful employment practice' ". *Morgan*, 536 U.S. at 117.  The timely filing requirement only mandates that the charge be filed within a period of time after the unlawful practice happened.  *Id.*  Therefore, it does not matter if some of the acts making up the unlawful employment practice happened before the statutory time period.  *Id.*  "Provided that *an* act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability". *Id (emphasis added).*

Here, Gonima filed his first discrimination charge in November 27, 2002, and then amended this claim in January 2004 to include constructive discharge.[4]  It is undisputed among the parties that Gonima may recover for claims of discrete discrimination, which occurred on or after November 26, 2001, and which are expressly identified in the November 27, 2002 and December 10, 2004 EEOC charges.[5] Additionally, the hostile environment claim survives due to the nature of the continuous unlawful employment practice element. Therefore, the only claims alleged in the November 27, 2002, EEOC charge that survive to be reviewed in this Order for Summary

---

[4] Gonima also filed a second discrimination charge in December of 2004, alleging retaliation for filing the first EEOC charge. That charge is timely filed and is not addressed or dismissed here.  The retaliation claim is analyzed separately below.

[5] There is no dispute that Claims which are found in Gonima's Interrogatories but which are not expressly stated in the November 27, 2002, EEOC charge are invalid due to failure to exhaust all administrative remedies.  Likewise, it is undisputed that certain "denial of promotion" claims are void because they occurred prior to November 26, 2001.

Judgment are: (1) Hostile Work Environment; (2) Denial of Promotion to the positions of warehouse worker/driver May 2002, vehicle mechanic January 2002, and mechanical inspector in November 2002; and (3) constructive discharge in July 2003.

### C.  **Gonima Retains Right to Continue with Hostile Environment Claim**

Title VII is violated when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of the employee's employment and create an abusive working environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 17, 21 (1986); *Clark Country School Dist. v. Breeden*, 532 U.S. 268, 270 (2001); *Faragher v. City of Boca Raton*, 524 U.S. 775, 786. (1998).  To establish hostile work environment, the employee must show that: (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on the national origin of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. *Walton v. Johnson & Johnson Services, Inc.*, 347 F.3d 1272, 1280 (11th Cir. 2003); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).[6]  The fourth element is the issue on which most hostile environment cases are decided.  *Mendoza*, 195 F.3d at 1245.  To constitute hostile working environment, the harassment must stem from extreme offending conduct, and not simple teasing, offhand comments or isolated incidents (unless they are extremely serious). *Faragher*, 524 U.S. at 778.

In the case at hand, the parties do not dispute that Gonima is part of a protected class on the basis of his national origin.  Gonima claims that he was subject to unwelcome harassment and alleges twenty-six separate accounts of treatment by his co-workers and supervisors, the occurrence of which is not disputed. The Board also does

---

[6] Hostile work environment claims based on national origin and race are reviewed under the same standard as the claims based on sexual harassment.  See *Morgan*, 536 U.S. 101, 116 (footnote 10) (citing *Faragner v. Boca Raton*, 524 U.S. at 786-787 and note 1; *Meritor Savings Bank FSB*, 477 U.S. at 66-67).

not address or dispute that there would be basis for holding it liable if the other elements are met.

The parties dispute whether these twenty-six acts are based on Gonima's national origin.  The Defendant Board claims that Gonima himself admitted that the harassment was not based on Gonima's national origin, and that instead the discriminatory treatment by Gonima's co-workers was caused by a failure on the part of management to prepare mechanics for having a new employee.  Board further argues that only five or the twenty-six alleged acts of harassment/discrimination shown by Gonima include acts that pertain directly to Gonima's national origin.  These "directly linked to national origin" acts referred to by the Board are all incidents of verbal harassment which indicate reference to Gonima's Columbian origin and/or immigrant status.  The Board does not offer evidence sufficient enough to persuade this Court.  First of all, motivations for harassment/discrimination acts are often bifurcated and complex.  Just because most of the alleged acts do not expressly contain words "Columbian" or "Immigrant", does not mean that they were not motivated or fueled by Gonima's national origin.  Furthermore, there is no requirement that Gonima prove that all of the twenty-six alleged acts of discrimination were based on his national origin. The Court cannot decide whether each of the twenty-six specific occurrences of alleged harassment are motivated by Gonima's national origin.  Certainly, it may be that some of the acts alleged were caused by motives other than Gonima's national origin. However, Gonima has established at least a genuine issue of material fact as to whether the harassment/discrimination acts were based on Gonima's national origin.  These questions of fact must be left to the trier of fact.

The parties further disagree on whether the conduct complained of by Gonima was severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment. The Board argues that the cumulative effect of the discriminatory conduct is not enough to establish hostile environment because there are only five incidents of verbal harassment to be considered. The Court does not agree.  The record contains sufficient evidence to show many acts and conditions outside of the verbal harassment incidents that create, at minimum, a genuine issue of fact, as to whether these acts, considered cumulatively, are severe and pervasive enough to alter the terms and conditions of Gonima's employment and create a discriminatory and abusive work environment.  For example, Gonima's job duties may have included cleaning out the "sludge water" out of a ditch, but Gonima should not have expected to do so without proper equipment like rubber boots.  Similarly, Gonima's job duties may have included cleaning school busses by hand; but Gonima was required to clean seven to ten buses by hand, in the open, with no sun protection, and no meaningful opportunities to take water or bathroom breaks; while his co-worker cleaned one or one and a half bus, under a roof, with a fan, and a radio.  These conditions were severe enough that Gonima requested to change his schedule during the summer from four ten-hour days to five eight-hour days.  Beside the regular verbal harassment, Gonima was subjected to numerous other acts of harassment, including: Gonima's car was scratched and his tires were slashed; he was required to sharpen blades without safety equipment; Gonima was screamed at when asking for help, on at least one occasion; Gonima was forbidden to touch any tools, as well as help or watch the mechanics work; and trash and trashcans were thrown in front of Gonima's locker.

These conditions, both verbal and otherwise, when considered as a whole, are sufficient to give a reasonable jury an opportunity to find hostile work environment. The record supports a genuine issue of material fact. Therefore, Gonima's claim for hostile work environment is allowed to remain.

### D.  Gonima Failed to Prove Unlawful Denial of Promotion

The Board argues that Gonima failed to prove unlawful denial of promotion.  The Court agrees that the record contained insufficient evidence to prove that unlawful denial of promotion took place.  The Plaintiff does not address this issue whatsoever, in his Response to Defendant's Motion for Summary Judgment.

To establish a *prima facie* case of unlawful denial of promotion, Gonima must show hat (1) he is member of a protected minority group, (2) he was qualified for and applied for promotion, (3) he was rejected in spite of his qualifications, and (4) individual who received promotion is not member of protected group and had lesser or equal qualifications. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998).

It is well established that the employer does not have to change its traditional management prerogatives in order to give preferential treatment to minorities or women. *Burdine*, 450 U.S. at 259 (citing *Steelworkers v. Weber*, 443 U.S. 193, 205-206 (1979)). In fact, "the employer has the discretion to choose among equally qualified candidates, provided the decision is not based on unlawful criteria". *Id.*  Furthermore, just because the court does not agree with employers hiring decision, does not itself create discrimination liability.[7] Id.  The promotions to be reviewed by this Court are:

---

[7] This is merely a factor, which is probative of the possibility of pretext. *Burdine*, 450 U.S. at 259.

Warehouse Worker/Driver May 2002, Vehicle Mechanic January 2002, and Mechanical Inspector November 2002.

*Warehouse Worker/Driver May 2002*

The Board hired a black male to fill the position of warehouse worker/driver. This candidate had extensive experience as a warehouse worker. Gonima did not have verifiable experience as a warehouse worker. The hired candidate was also a member of a protected group (albeit another protected group), and he possessed better qualifications for the job. Therefore, Gonima failed to show genuine issue of material fact that he was unlawfully denied a promotion to the position of warehouse worker/driver in May of 2002.

*i.   Vehicle Mechanic January 2002*

There is no record that Gonima applied for the position of vehicle mechanic in January 2002. Gonima did apply for the position of vehicle mechanic in January 2003. The position of vehicle mechanic required: four years of experience as a "skilled journeymen work in the maintenance and repair of automotive and related equipment", commercial driver's license, A/C certification within twelve months of employment, and ASE certification preferred. Board hired white male, who is a certified master mechanic, master repair technician, with extensive heavy equipment repair and supervisory experience. Gonima has a degree from the Former Soviet Union, which is equivalent to that of a mechanical engineering degree. However, the position did not ask for mechanical engineering skills, which the Board perceived to be different from vehicle repair skills. Additionally, although Gonima's resume does show other related work experience like "chief of equipment", it does not show any actual mechanic work

experience.  Gonima was not better or equally qualified for this position.  Therefore, Gonima failed to show genuine issue of material fact that he was unlawfully denied a promotion to the position of Vehicle Mechanic January 2002 and January 2003.

## *ii.      Mechanical Inspector November 2002*

Gonima filed his application for the position of mechanical inspector after the position was already filled.  Even so, the position required "skilled work in the inspection of school buses and other vehicles to detect any defects and to insure that all equipment receives proper maintenance".  Qualifications included: commercial driver's license, and an A/C certification within twelve months of employment. The Board hired a white male, who had extensive work experience as a mechanic with the Board, U.S. Air Force, and with Toyota. The employed candidate had a commercial driver's license, brake maintenance technical training, NAPA inspection, repair and maintenance commercial certification, as well as certifications in diesel engines, refrigerant recycling, and transmission trouble-shooting.  This candidate was also certified by Florida Department of Education as a school bus inspector and school bus trainer. Gonima did not have any verifiable work experience as a mechanical inspector.  Gonima's resume shows experience in the administrative capacity, such as assessment and evaluation of equipment.  But there is no experience in actual repair and maintenance of equipment. Therefore, Gonima failed to show genuine issue of material fact that he was unlawfully denied a promotion to the position of Vehicle Mechanic January 2002 and January 2003.

Gonima Failed to prove a *prima facie* case of unlawful denial of promotion.[8] Accordingly, claim for unlawful denial of promotions is dismissed.

---

[8] It is the Plaintiff's burden to prove that employer's legitimate decision for hiring another was merely a pretext. See *Burdine*, 450 U.S. at 254-256. Since Plaintiff failed to discuss this claim in his Response to Defendant's Motion for Summary Judgment, no discussion of pretext is necessary here.

### E.  Gonima Failed to Establish Constructive Discharge

To establish constructive discharge, the Plaintiff has the burden to prove that his working conditions were so difficult and intolerable that a reasonable person would be compelled to resign. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 146-147 (2004); *Walton*, 347 F.3d at 1282 (citing *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001)).  The standard for showing constructive discharge is higher than the standard for hostile work environment. *Walton*, 347 F.3d at 1182.  Thus, merely showing that plaintiff was subjected to actionable harassment is not enough. *Id.*

Here, Gonima had asked for a change in this working schedule due to the "exhausting nature of his job", and he was required to do unpleasant and strenuous activities, which may have affected his health.  However, Gonima, having the burden to prove circumstance amounting to constructive discharge, falls short of that standard. This is because Gonima remained at his job with the Board long after he contemplated finding another employment.  He interviewed and even turned down one job while maintaining his employment with the Board.  Gonima took a one-week vacation prior to his resignation because he already gained new employment with Gettel Toyota.  Clearly, Gonima did not feel that his employment was so unbearable that he had no choice but to resign, instead of keeping his current employment until he could secure another job. Furthermore, Gonima testified that he wanted to keep open the possibility of returning to employment at the Board because "the school board is a good company".  Therefore, Gonima failed to establish his burden of constructive discharge.  Accordingly, Gonima's claim for constructive discharge is hereby dismissed.

F. **Gonima Retains Right to Continue with the Retaliation Over the Levy County School Board Position**

An employer cannot retaliate against an employee who has opposed an unlawful employment practice, made a charge, or participated in any way in an investigation of the unlawful employment activity. See 42 U.S.C. §2000e-3(a); see *Saffold v. Special Counsel, Inc.*, 147 Fed.Appx. 949, 950 (11th Cir. 2005).  To establish a *prima facie* case of retaliation, Gonima must establish that: (1) he participated in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse employment decision. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Safford*, 147 Fed.Appx. at 950.  The Board concedes that Gonima was engaged in a protected activity when he filed the November 27, 2004, EEOC charge, and that Gonima suffered an adverse employment action when Levy Country rescinded its job offer.  However, the Board argues that Gonima failed to establish a causal connection between the protected activity and the adverse employment action, and that Gonima cannot prove that Board's legitimate, non-retaliatory reasons for its actions were a mere pretext to a retaliatory act.

To show the causal connection, the plaintiff must establish "that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecomms. Inc.*, 231 F.3d 791, 799 (11th Cir. 2000); *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1985). Circumstantial evidence can be used to establish the requisite causal connection.  See *Brungart,* 231 F.3d at 799; see *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

In August of 2004, Gonima was offered a position as a mechanic with the School Board of Levy County.   During discovery, the Board obtained records from Levy

County with all documentation pertaining to Gonima's employment offer with the Levy County School Board.  These records allegedly contained an application submitted by Gonima to Levy County School Board.  The Board cites to this application and claims that in this application Gonima misstated that he has "been directly supervised by Cathy [Kathleen] Braselton, director of transportation."  After the review of the record, and the Levy employment offer documents in particular, the Court notes that the Board failed to provide Gonima's application.[9]  Therefore, the Court cannot rely on this alleged employment application, or accept Defendant's allegations that Gonima claimed Kathleen Braselton to be his direct supervisor in that employment application.

Gonima obtained a reference letter from Kathleen Braselton, the Director of Transportation at the Board.   Through her affidavit, Kathleen Braselton verified that she did, in fact, write and sign that reference letter on behalf of Gonima.  The Board claims in its Motion for Summary Judgment that this letter "at least implied that she supervised Gonima and was his director".  Unlike Gonima's alleged employment application, the letter of recommendation was submitted in the record.[10]  The Court finds that the letter has absolutely no indication, implication or inference that Kathleen Braselton is Gonima's direct supervisor.  This letter simply states that it is written on Gonima's behalf, that Mrs. Braselton has known Gonima for several years, and that she believes Gonima to be a hard worker and a good person.  Kathleen Braselton signed the letter in her official capacity as "Director of Transportation".

---

[9] Board cites to Gonima's application as Exhibit D "p.2-4", which the court deduced to mean bates number 500602-500604.  However, Exhibit D pages skip from bates number 500601 to 500607.  After a thorough review of the record, the Court cannot find any evidence of Gonima's application, and, therefore, cannot rely on its existence in support of Defendant's argument.
[10] Kathleen Braselton's letter is in Exhibit D, bates number 500609, and cited by the Board as "p.9".

When Gonima's supervisor, Ross, was contacted by Levy Country and asked to confirm the reference from Kathleen Braselton, Mrs. Braselton was summoned to a meeting with Superintendent Dearing, Assistant Superintendent Horton, and Bill Owners. The superintendent informed Mrs. Braselton that he believed Gonima forged her signature on a letter of recommendation and submitted it to the Levy County School Board. According to Horton's own affidavit, after the meeting where Mrs. Braselton confirmed that she wrote the reference letter, the Board's human resource department "merely informed Levy Country that the reference letter had not been written by Mr. Gonima's director" and that "there were no statements made by the Board that Mr. Gonima had falsified a reference letter."  It seems to the Court that the statement "merely informed Levy County that the reference letter had not been written by Mr. Gonima's director"[11], is quite ambiguous and could have been understood in one of two ways by the Levy County official. First interpretation, one that the Board would like us to assume, is that the letter had indeed been written by Mrs. Braselton, but that she was not Gonima's direct supervisor.  The other interpretation is that the letter was in fact falsified, since it has not been written by "Gonima's director".  Given the fact that the evidence in the record, as it was given to this Court, does not offer any indication that Gonima in any way represented to the Levy County School Board that Kathleen Braselton was his direct supervisor, it is quite possible that the Levy Country official gave the latter interpretation to Defendant's ambiguous statement.

Whether the statement made by the Board was intentionally ambiguous and/or was meant to create the impression that Gonima falsified the letter of recommendation is

---

[11] The Board did not offer evidence that it gave any other qualifying information to the Levy County official.  The is also no evidence that the Board actually explained to the Levy County official that the letter of reference was genuine, but that it was written by someone other than Gonima's direct supervisor.

a genuine question of material fact.  The Defendant Board failed to show a legitimate reason for its decision to make that ambiguous statement[12], because the record is either absent or clearly does not support Defendant's argument.[13]  Therefore, a genuine issue of material fact exists.  Accordingly, Plaintiff Gonima retains his claim for retaliation over the Levy County School Board position, to be presented to the jury.

### G.  Gonima Failed to Prove Intentional Infliction of Emotional Distress

Pursuant to Florida law, to establish intentional infliction of emotional distress, the plaintiff must show "outrageousness." *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278 (Fla. 1985).  The standard requires deliberate or reckless infliction of severe mental suffering caused by outrageous conduct. *Id.* Outrageous conduct means conduct which goes beyond all possible bounds of decency, and is intolerable in a civilized community. *Id.* Gonima simply does not reach the high threshold of this standard.[14] The burden of proof was on Gonima to show this Court how he has met the requirements of Intentional Infliction of Emotional Distress standard, but Gonima failed to do this.  Therefore, Gonima's claim for Intentional Infliction of Emotional Distress is hereby dismissed.

---

[12] No pretext discussion is needed here because Defendant did not show a legitimate reason for its action. See *Burdine, 450 U.S. at 254-256*.

[13] See *Burdine*, 450 U.S. at 255 (requiring that the defendant must offer admissible evidence to show its legitimate reason).  The record also does not give the Court any indication whether or not Mrs. Braselton was Gonima's indirect supervisor.  It seems logical that the Department of Vehicle Maintenance would be a part of the larger Department of Transportation, in which Kathleen Braselton was the Director. Unfortunately, the record offers no insight as to how the departments are organized at the Board.

[14] The Court cannot see from the record that Plaintiff Gonima has achieved the standard of Intentional Infliction of Emotional Distress.  Furthermore, the Plaintiff, the bearer of the burden of proof, does not offer any additional insight to the Court, other than directing the Court to see the "record evidence".

## II.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF BRASELTON

### A.  Braselton Failed to File a Timely Administrative Charge of Discrimination For Some Claims

Braselton claims retaliation as a result of his participation in the EEOC investigation for co-Plaintiff Gonima. These claims are based on Title VII of the Civil Rights Act of 1964 (Title VII) and the Florida Civil Rights Act of 1992 (FCRA). Both Title VII and FCRA require that administrative remedies must be exhausted before a lawsuit can be initiated. See *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970). The scope of the subsequent lawsuit is limited to the scope of the Equal Employment Opportunity Commission investigation, reasonably derived from the charge of discrimination. *Sanchez*, 431 F.2d at 466; *Griffin v. Carlin*, 755 F. 2d 1516, 1522(11th Cir. 1985); *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1224-1225 (11th Cir. 2000). Furthermore, Title VII mandates that the initial EEOC charge must be filed within 300 days of the occurring alleged unlawful employment practice. *National Railroad Passengers Corp. v.* Morgan, 536 U.S. 101, 110 (2002). Likewise, FCRA dictates a charge filing limitation of 365 days from the alleged violation. Fla. Stat. §760.11(1); see *Greene v. Seminole Electric Cooperative, Inc.*, 701 So.2d 646, 648 (Fla. 5th DCA 1997) (citing *St. Petersburg Motor Club v. Cook*, 567 So.2d 488 (Fla. 2d DCA 1990); Fla. Stat. §760.11(1). The only exceptions that allow the tolling of the limitation period are found in §95.051 of the Florida Statutes. *Greene*, 701 So.2d at 648.

Here, Braselton filed only one EEOC claim on August 30, 2004. First, some of the claims alleged in the complaint are not identified in the EEOC charge, and, thus, all those claims are barred for failure to first exhaust administrative remedies. Second, to be

valid, each of the alleged retaliatory acts must have occurred on or after August 29, 2003.[15]  When the statute of limitations is applied to Braselton's EEOC charge, only one claim survives, the transfer of June 24, 2004.  Braselton does not address the application of the statute of limitations and the lateness of his claims in the Response to Defendant's Motion for Summary Judgment, and, consequently, does not allege any acts or circumstances enumerated in the statute which would extend the permitted filing time. Therefore, all Braselton claims, with the exception of the June 24, 2004 transfer are barred by the statute of limitations and are hereby dismissed.

---

[15] Alleged acts must have occurred on or after September 3, 2003 for Title VII cause of action, and on or after August 29, 2003, for FCRA cause of action.

B.  **Braselton Failed to Establish Retaliation with Respect to the June 24,**
   **2004 Transfer Claim**

An employer cannot retaliate against an employee who has opposed an unlawful employment practice, made a charge, or participated in any way in an investigation of the unlawful employment activity. See 42 U.S.C. §2000e-3(a); see *Saffold v. Special Counsel, Inc.*, 147 Fed.Appx. 949, 950 (11th Cir. 2005).  To establish a *prima facie* case of retaliation, Braselton must establish that: (1) he participated in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse employment decision. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Safford*, 147 Fed.Appx. at 950.  For this summary judgment, the Board concedes that Braselton was engaged in a protected activity when he: informed a supervisor about the comments made by another supervisor and other workers, made an affidavit in the EEOC investigation of a co-worker, and when the Department of Justice requested an interview with him.  The Board also concedes that the June 2004 transfer constitutes an adverse employment action. Therefore, the *prima facie* case hinges on the third element – the causal connection.

To show the causal connection, the plaintiff must establish "that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecomms. Inc.*, 231 F.3d 791, 799 (11th Cir. 2000); *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1985). Plaintiff must at least establish that the decision maker was aware of the protected activity at the time of making the adverse employment action.  *Brungart,* 231 F.3d at 799; see *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).  Circumstantial evidence can be used to establish the knowledge of the

decision maker. *Id*.  Plaintiff must show that the Board's agent who actually took the adverse action was aware of Plaintiff's involvement in the protected activity.  *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997).  This is logical because a decision maker cannot be motivated to retaliate against an activity, which is unknown to him.  *Brungart,* 231 F.3d at 799.

In the case at hand, it is undisputed that Shapiro, Board's Staff Attorney, had knowledge about Braselton's participation in the protected activity.  However, Shapiro was not the decision maker who transferred Braselton in June of 2004.  Whether Shapiro actually informed the decision maker at the Board about Braselton's participation in Gonima's investigation is a question of fact.  Nevertheless, the Court does not have to stop its analysis here.  Braselton's claim must still necessarily fail as a matter of law because, even if Braselton can prove that the Board knew about his participation in a protected activity, the evidence presented to this Court by Braselton fails to show that the Board's decision to transfer Braselton on June 24, 2004 was merely a pretext and not a legitimate reason.

In an employment discrimination case, when the defendant proffers legitimate, nondiscriminatory reason for its adverse employment decision, the burden shifts back to the plaintiff to prove that the reasons offered are merely pretextual. See *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-256 (1981); *Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).  The defendant may be granted a summary judgment if it "produces evidence of a legitimate nondiscriminatory reasons for the employment action". *Earley*, 907 F.2d at 1081.  The defendant must offer admissible evidence to show its legitimate reason. *Burdine,* 450 U.S. at 255.  However,

the plaintiff always bears the ultimate burden of proof of retaliation, so the defendant does not need to persuade the court that it was actually motivated by the proffered reasons. See *Burdine,* 450 U.S. at 253-254.  In order "to survive summary judgment, the plaintiff must present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext."  *Earley,* 907 F.2d at 1081 (citations omitted). Conclusory allegations and assertions are insufficient to meet this burden. *Id.*

Braselton claims that the June 2004 transfer was made as retaliation for the December 2003 EEOC affidavit on behalf of Gonima, and the June 2004 DOJ request for an interview.   The Defendant Board offered evidence that its decision to transfer Braselton in June of 2004 was based on legitimate, nondiscriminatory reasons. Specifically, the Board produced affidavits of Director of Operation and Maintenance since 1997 (Henson), Assistant Superintendent for School Support Services since 1999 (Horton), and Vehicle Maintenance Supervisor from 1999 to 2003 (Ross).  From these affidavits it is evident that the ultimate decision maker in this case was the Superintendent of Schools (Dr. Dearing).  Braselton confirms that Superintendent Dearing was not involved in any retaliatory conduct toward Braselton.  Horton's affidavit states that Braselton was transferred from Bayshore High School because Dr. Dearing believed Braselton's services would be better used at Manatee High School under Principal Asher.  Horton was not aware of Braselton's involvement in the protected activity. At the time of the June 2004 transfer, none of Braselton's supervisors[16], prior or current, had participated in, or even had knowledge of, the transfer decision at the time it was being made by the Superintendent. Plaintiff offers no comment whatsoever in his Response to Defendant's Motion for Summary Judgment regarding the legitimate reason,

---

[16] Other than Superintendent Dearing and Assistant Superintendent Horton.

produced by the Board, for transferring Braselton in June of 2004.  Furthermore, the record does not reveal any evidence disputing the Board's proffered legitimate reason, other than the assertions made by Braselton himself.

Accordingly, Plaintiff Braselton failed to prove that the Board's legitimate reason, for transferring Braselton in June of 2004, is a mere pretext to retaliation. Therefore, Braselton's retaliation claim is hereby dismissed.

### C. **Damages**

Because Braselton's retaliation claim is dismissed, damages need not be discussed as they are moot.  Accordingly, it is

**ORDERED** that, Defendant's Motion for Summary Judgment as to Plaintiff GONIMA is **DENIED** for claims of hostile work environment and retaliation, and **GRANTED** for all other claims.   Defendant's Motion for Summary Judgment as to Plaintiff **BRASELTON** is hereby **GRANTED** and the Clerk of Court is directed to enter judgment for the defendant and against this plaintiff and to terminate Braselton from this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, on this 24th day of April, 2007.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

cc: All Parties and Counsel of Record